Gertrude KEITH, Appellant,

v.

The JOS. G. SCHMERSAHL CO.,
Respondent.

No. 49705.

Supreme Court of Missouri,

Division No. 2.

Sept. 9, 1963.

Motion for Rehearing or to Transfer to
Court En Banc Denied Oct. 14, 1963.

Louis S. Czech, Clayton, for appellant.

Evans & Dixon, William Wallace Evans,
St. Louis, for respondent.

BARRETT, Commissioner.

In this action to recover $45,000 damages
for personal injuries sustained in a fall on
steps in a "display home" at 5 Sun-Ridge
Lane in Florissant a jury returned a ver-
dict for the defendant and the plaintiff,
Gertrude Keith, has appealed. The Keiths

had once entered into a contract to purchase the completely furnished residence but the real estate agents were unable to sell their property and so the contract did not "materialize." Mrs. Keith was nevertheless interested in the property and on July 20, 1960, made an appointment with the defendant's real estate agent for the purpose of showing the property to her friends, the Dickinsons. The agent had shown the Dickinsons and the Keiths through the upper level of the house in which there was a carpeted stairway of five steps. And in connection with these steps there was a wrought iron handrail. The agent then suggested that they look at the family room at the basement level. There were five steps of natural wood from the kitchen to the family room, and there was no handrail for these steps. The agent "stepped aside" and Mrs. Keith "glanced at the steps and took my first step with my left foot. As I brought my right foot I felt a slipping beneath my foot. I fell and there was no handrail to grab. * * * I reached and my arm scraped the wall on this side, the left wall" and she fell all the way down in a bumping fall. As she started down the steps Mrs. Keith had not noticed it but these wooden steps were covered with a "clear plastic with a slight rib." Mrs. Keith's husband described the plastic as "slippery plastic," and, he said, "It just looked slick to me. It had little ripples in it and looseness in it." In its answers to interrogatories the defendant said that its carpenter had placed the 36 inch wide plastic, "long enough to cover the steps" on the stairway, "taped at the top with masking tape, and taped and tacked with thumb tacks the rest of the way down." Mrs. Dickinson said that it was "clear plastic" and, she said, "It was loose." In her petition and so far as material here Mrs. Keith pleaded "That defendant maintained *a slick plastic cover* over the steps inside the said home and that the said slick plastic cover *was not nailed down and was loose.* That defendant maintained the said steps inside the said house *without a bannister or hand railing and also maintained a*

*slick plastic cover over the steps,* and this situation combined created a dangerous and not reasonably safe condition in the said house in question." (Emphasis supplied.) The appellant now contends that the trial court erroneously overruled her motion for a new trial and that this court should grant a new trial because the court prejudicially erred in admitting in evidence exhibit 2, a 36 inch wide, 7 foot long strip of plastic and in permitting a witness to testify to certain tests he had made with the exhibit. In addition, she urges that the court prejudicially erred in giving to the jury instructions 2, 3, 7 and 8.

After Mrs. Keith's claim was made known, defendant's counsel asked Mr. Schmersahl to remove and preserve the plastic cover on the stairway. He removed a plastic cover from the natural wood stairway to the family room at 5 Sun-Ridge Lane but he could not say that it "was the very plastic on there at the time the lady fell." He said that all the plastic used in the subdivision was "a cerrated plastic covering that you use for covering and preserving finished floors * * * in display houses," and he said that all of it was purchased from the Airport Lumber Company in Florissant. The real estate agent, shown the exhibit, was asked "Can you tell one way or another whether or not that is identical or similar to the type plastic cover that was on the stairway when Mrs. Keith had her fall?" He answered, "I would say it would be, yes." Subsequently, he said, "I would say it would be the same type of material." The plaintiff's objection, while Mr. Schmersahl was testifying, was "because the plastic we are concerned with is the plastic that was down there on that particular day and I object to similar or like plastic." When the real estate agent testified the objection was "It's irrelevant and immaterial as being the same or similar unless it is identical to the plastic that was on there. I object to the form of the question."

But if the plastic was "identical or similar" there could be no problem of its

having "remained in the same condition" as the bullet-ridden door in a homicide (State v. Goddard, 146 Mo. 177, 48 S.W. 82) and there was not and could not be an objection that by reason of remoteness of time the conditions were not sufficiently identical or similar and therefore had lost probative force. New Era Manufacturing Co. v. O'Reilly, 197 Mo. 466, 95 S.W. 322. The plaintiff offered in evidence exhibit A which Mrs. Keith identified as a photograph of the steps on which she fell, including, except for the quarter round holding the plastic on each step, the plastic covering. The essential issue was whether when Mrs. Keith fell the plastic on the stairway was "slick" and "loose." In these circumstances, the plastic strip being "identical or similar" and the immediate question being whether it was "slick," the exhibit, obviously, was helpful to the jury, certainly its admission in evidence was not manifestly prejudicial. Asbury v. Fidelity National Bank & Trust Co., 231 Mo.App. 437, 442, 100 S.W.2d 946, 949–950.

■ An engineer made certain tests with this particular strip of plastic and it is objected that the court erred in permitting him to testify to the results of his experiments because it "created a false situation with the jury in that they were led to believe that the plastic upon which plaintiff had fallen was not slick or slippery." It is said that this information "came about because of the results of the tests on Exhibit 2 which was not proven to be the plastic upon which plaintiff fell." It may be that what has been said as to the admissibility in evidence of the exhibit is sufficient to inferentially dispose of this objection. But, tests aside, the material was "identical or similar" and undoubtedly the jury was as capable as any witness of judging whether or not it was "slick." The simple test performed by the engineer, pulling a weighted block with a scale attached across eight types of material employed as floor covering, was not particularly impressive from a scientific standpoint (Annotation 76 A.L.R.2d 354, 374), but from mere observation the jury was as ca-

pable of drawing the proper inference as was the expert (James v. Kansas City Gas Co., 325 Mo. 1054, 1070, 30 S.W.2d 118, 124), and in all the circumstances it may not be said that the trial court manifestly abused its discretion in permitting the witness to testify as to the results of his experiments. Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S.W.2d 918.

As a matter of fact the essentially meritorious question upon this appeal is whether the court prejudicially erred in instructing the jury, particularly in omitting from the instructions given at the defendant's behest the requirement or hypothesis that appellant contends was the essential issue, the absence of a handrail on the stairway. In so far as material here the hypothesis of plaintiff's instruction 1 was "and if you further find and believe that this plastic was slippery and loose and that said stairway contained no handrail." Defendant's instruction 2 made no reference to a handrail, it simply told the jury that "unless you find and believe from the evidence that the plastic cover on the stairway in question was slippery and loose, and that plaintiff was caused to fall and be injured by reason of said slippery and loose condition" the verdict should be for the defendant. Likewise as to contributory negligence in its instruction 3 there was no reference to a handrail, in substance a verdict was directed upon a finding that Mrs. Keith saw or should have seen and known "of said plastic cover and of its looseness and slipperiness." As indicated, it is urged that these instructions were prejudicially erroneous in omitting from their hypotheses the absence of a handrail. For example, as to instruction 2 it is said that in omitting this element it is not a "complete converse instruction." And it is said that the contributory negligence instruction "emphasizes certain parts of plaintiff's evidence (plastic) without consideration to the remainder of plaintiff's evidence (handrail)." Therefore it is urged that these instructions misdirected the jury and unfairly circumscribed the factual basis of her recovery. Freeman v. Myron

Green Cafeterias Co., (Mo.), 317 S.W.2d 303; Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355.

As stated in the beginning, Mrs. Keith said "there was no handrail to grab," that she "reached and my arm scraped the wall." The plaintiff's status was that of an invitee, but certainly there is some common knowledge as to what is and is not a safe inside stairway to a basement family room and in that respect there is perhaps a difference in steps in a hotel or other public building and a display residence. But in addition to the noted evidence Mrs. Keith said that as she landed at the bottom of the stairway the real estate salesman said, "There should have been a handrail there." Other than this exclamation there was no testimony by an architect or other person qualified to speak on the subject that for lack of a handrail this inside stairway was hazardous. McStay v. Citizens National Trust & Savings Bank, 5 Cal.App.2d 595, 43 P.2d 560; Coxey v. Guala, 112 Pa.Super. 460, 171 A. 484; Union Bank & Trust Co. of Los Angeles v. Hattie Carnegie, Inc., 1 A.D.2d 199, 149 N.Y.S.2d 122; Brooks v. Bergdorf-Goodman Co., 5 A.D.2d 162, 170 N.Y.S.2d 687; Renfro Drug Co. v. Jackson, (Tex. Civ.App.), 81 S.W.2d 101.

In determining whether due care has been exercised the presence or absence of a handrail is a factor to be considered along with other physical factors (Anderson v. Younker Brothers, Inc., 249 Iowa 923, 89 N.W.2d 858) but in a "display home" the mere absence of a handrail on an inside flight of five or six stairs is not sufficient in and of itself to support the inference of negligence. Annotation 64 A.L.R.2d 398, 436; Stoll v. First National Bank of Independence, 234 Mo.App. 364, 375, 132 S.W.2d 676, 682, and Rush v. Townsend and Wall Company, (Mo.), 343 S.W.2d 44, an allegedly slick handrail case. Lewis v. Gershon, (Mo.App.), 335 S.W.2d 522, was a landlord and tenant case and was concerned with an outside stairway, but of a plaintiff's instruction the court said, "[a] reading of the entire instruction indicates that the jury was, in effect, told that it was the duty of defendant to maintain handrails. There is no such duty in this case." In the posture of this record, in short, there was no duty to provide handrails and the mere absence of handrails on these particular steps could not be a ground of recovery as hypothesized in plaintiff's instruction 1. And as of course, therefore, defendant's instructions 2 and 3 were not manifestly and prejudicially erroneous in their failure to converse or include the absence of handrails. There was an evidentiary basis for the contributory negligence instruction and its hypothesis is fairly comparable to the instruction in Tomlin v. Alford, (Mo.), 351 S.W.2d 705.

Instruction 7 told the jury that defendant was not an insurer of the safety of its premises "and *the mere fact of itself that plaintiff has brought suit* alleging that defendant was negligent is no evidence whatever that defendant was in fact negligent." The jury was then told that negligence was not "in law presumed" but must be established by proof as explained in other instructions. The instruction then admonished the jury against "surmise, guesswork and speculation" and concluded by saying that if they were unable to find the defendant negligent without resorting to speculation and guesswork their verdict should be for the defendant. It is said that this instruction "allowed a verdict upon partial surmise, guesswork and speculation" and in its use of the "mere fact" language falls within the condemnation of Wise v. St. Louis Public Service Co., (Mo.), 357 S.W.2d 902.

As to the first objection or interpretation of the effect of the instruction and its permitting a verdict on "partial" surmise and speculation, it would seem, if that is its purport, that it would be an error in the plaintiff's favor. But unlike the Wise case, this was not a res ipsa loquitur submission and the cause was tried prior to the decision of the Wise case. Furthermore, instruction 7 is not comparable in either form or sub-

**338**

stance to the condemned instruction in the Wise case. The instruction there was truly concerned with the burden of proof in a res ipsa loquitur case, and in its second paragraph said, "You should not find that the defendant was negligent *from the mere fact of the occurrence* shown by plaintiff's evidence." See also Sutton v. Fox Missouri Theatre Company, (Mo.), 356 S.W.2d 41, and its *"the mere fact that plaintiff was injured by a fall."* It was said in condemnation of the instruction in the Wise case that the italicized language was "argumentative and in certain circumstances confusing." Instruction 7 does not mention "the mere fact of the occurrence" or refer to "the mere fact that plaintiff was injured" (Grote v. Reed, (Mo.), 345 S.W.2d 96), it referred only to the mere fact that plaintiff had brought the suit and it told the jury that defendant was not an insurer of the safety of its premises and could only be found liable for the plaintiff's injury if negligent (Kamper v. United Telephone Co., (Mo.), 259 S.W.2d 801; Gardner v. Turk, 343 Mo. 899, 123 S.W.2d 158), and the plaintiff does not complain of the jury's being admonished against basing a verdict upon mere speculation and guess. Le Grand v. U-Drive-It Co., (Mo.), 247 S.W.2d 706, 711.

Instruction 8 was another abstract instruction cautioning the jury against passion and prejudice. It told the jury that it was their duty to decide first, under all the facts and circumstances, whether plaintiff was entitled to recover, prior to the determination of that question they were told that they had no right "to consider the amount of the plaintiff's damages." In employing this terminology and in thus cautioning the jury the instruction was neither misleading nor a misdirection. Lukitsch v. St. Louis Public Service Co., 362 Mo. 1071, 1082, 246 S.W.2d 749, 755; West v. St. Louis Public Service Co., 361 Mo. 740, 236 S.W.2d 308.

In conclusion it may be said as to both instructions 7 and 8 that this case involved simple, easily understood issues and there is no demonstration that the jury was misled or misdirected to the plaintiff's manifest prejudice. Sup.Ct.Rule 83.13(b), V.A.M.R. V.A.M.S. Sec. 512.160(2); Young v. Kansas City Public Service Co., (Mo.), 270 S.W.2d 788, 792. As to these instructions the case is certainly not comparable to the "utter confusion" created by the twenty-eight instructions in Sutton v. Fox Missouri Theatre Co., supra. As indicated, there was no manifestly prejudicial error and the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.